IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
VIRGINIA ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:96-cr-109 |
| v. | ) | |
| | ) | |
| | ) | By:   Michael F. Urbanski |
| LAWRENCE WOODARD, | ) | Chief United States District Judge |
| Defendant | ) | |

## MEMORANDUM OPINION

This matter comes before the court on a motion for compassionate release filed by
Lawrence Woodard pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 128. Woodard,
represented by counsel, filed a motion on May 24, 2022, and the government filed its response
on July 26, 2022. On November 22, 2023, the parties were ordered to file additional briefing
on whether Woodard's underlying sentence could be reduced when he had completed the
sentence and was serving a sentence for a separate offense. ECF No. 138. The parties complied
with the briefing order, ECF Nos. 139, 143, 144, and the motion is ripe for disposition. For
the reasons discussed below, the court will **DENY** Woodard's motion for compassionate
release.

### I. Background

On December 12, 1996, Woodard and two codefendants were charged in an indictment
with one count of conspiring to possess with intent to distribute approximately two kilograms
of cocaine and distribute two kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1)(B)
and 846. Indictment, ECF No. 5. On December 16, 1996, the government filed a notice of

enhanced punishment as to Woodard. ECF No. 8. Woodard and one of his co-defendants were tried by a jury and Woodard was found guilty. Jury Verdict, ECF No. 59.

With the sentence enhancement, Woodard faced a statutory term of imprisonment of 10 years to life. Presentence Investigation Report ("PSR"), ECF No. 100 ¶ 77; 21 U.S.C. § 841(b)(1)(B). He was classified as a career offender, making his offense level 34 and his criminal history category VI, resulting in a sentencing guidelines range of 262 to 327 months. PSR, ECF No. 100 ¶ 78; United States Sentencing Commission, Guidelines Manual, Ch. 5 Pt. A (Nov. 1995) ("USSG" or "guidelines"). Without the career offender designation, his base offense level would have been 28, increased by two levels for possession of a firearm, giving him a total offense level of 30. PSR, ECF No. 100 ¶¶ 21–28. Even without the career offender designation, his criminal history category was VI, because he had 21 criminal history points. A base offense level of 30 combined with criminal history category VI renders a guidelines sentence of 168 to 210 months. USSG Ch. 5 Pt. A.

On November 14, 1997, Woodard was sentenced to a term of 327 months to run consecutively to any other state or federal sentence, and to be followed by an 8-year term of supervised release. ECF No. 69. Woodard appealed, and his conviction was affirmed on July 16, 1999. Woodard has filed several motions for post-conviction relief, all of which have been denied.

On July 17, 2008, while incarcerated at Butner Federal Correctional Institute, Woodard was charged with four counts related to a conspiracy to smuggle a firearm into the prison facility and bury it. Once the firearm was buried, the conspirators planned to alert authorities to the presence of the firearm and falsely report the names of other inmates involved in the

smuggling of the firearm with the goal of receiving a reduction in their sentences pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. Indictment, ECF No.1 in <u>United States v. Woodard</u>, No. 5:08-cr-202-BO-1 (E.D.N.C. filed July 17, 2008) (hereafter "EDNC case"). Woodard pled guilty to one count of attempting to obtain a firearm and obtaining a firearm while being an inmate of a prison, in violation of 18 U.S.C. § 1791(d), and one count of knowingly obtaining a firearm, and aiding and abetting another in doing so, while being an inmate of a prison, in violation of 18 U.S.C. §§ 1791(a)(1) and (a)(2). Indictment, ECF No. 1 in EDNC case, and Plea Agreement, ECF No. 33 in EDNC case. On April 15, 2009, Woodard was sentenced to a term of 60 months on the first count and a concurrent 87-month term on the second count, with the terms to run consecutively to any other count he was serving, and to be followed by a 3-year term of supervised release. J., ECF No. 36 in EDNC case. Woodard currently is housed at Federal Correctional Institution Edgefield and has a projected release date of October 29, 2026.[1]

Woodard seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that if he were sentenced today, he would not qualify as a career offender and his sentence would likely be 210 months rather than 327 months. In addition, if he were to receive a reduction in accordance with Amendment 782 of the guidelines, his sentence likely would be reduced further to 175 months. In addition, he argues that his health is declining and that he poses no risk to the public if he were to be released. Mot., ECF No. 128.

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed January 24, 2024) (search "Lawrence Woodard").

The government counters that Woodard cannot bring his claim regarding his career offender classification via a motion for compassionate release, and that even if he can bring his claim, he has not described an extraordinary and compelling reason for release. In addition, the government contends that because Woodard has satisfied the sentence he was assessed on the drug charges, the sentence he is serving for smuggling a gun into the prison cannot be reduced. The government also argues that his claim based on his health condition does not present an extraordinary and compelling reason for release. Finally, the government argues that the 18 U.S.C. § 3553(a) factors weigh against granting his motion. Resp., ECF Nos. 135, 144.

## II. Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Woodard's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Woodard asserts that he submitted his request for compassionate release to the warden of Federal Medical Facility Butner (where he was housed at the time) on February 6, 2022, ECF No. 128-1, and filed his motion for a sentence reduction more than 30 days later. The government does not contest that Woodard has exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court finds that Woodard has satisfied the statute's exhaustion requirement.

The court next must consider whether it should reduce the term of imprisonment. The United States Sentencing Commission recently amended the section of the guidelines that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling reasons" warrant a reduction. See USSG § 1B1.13 (Nov. 2023). The revised guidelines will be applied to each of Woodard's arguments.

## A. Medical Circumstances

A defendant may show an extraordinary and compelling reason for a sentence reduction based on medical circumstances when he can demonstrate the following:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

USSG § 1B1.13(b)(1)(A)–(C).

Woodard has been diagnosed with prostate cancer and was treated with radiation therapy in late 2021 and early 2022. Medical Rs., ECF No. 135-4 at 22–24, 59, 71. On April 1, 2022, his Prostate-specific antigen (PSA) was .78.[2] According to the American Cancer Society,

---

[2] PSA is a protein made by cells in the prostate gland. The PSA level in blood is measured in units called nanograms per milliliter (ng/mL). The chance of having prostate cancer increases as the PSA level goes up, but there is no set cutoff point that indicates whether a man has prostate cancer. Doctors use levels ranging from 2.5 to 4 as indicating that a man might need further testing. When prostate cancer develops, the PSA level often goes above 4. https://www.cancer.org/cancer/types/prostate-cancer/detection-diagnosis-staging/tests.html

PSA levels drop slowly after radiation therapy and might not reach their lowest level until two years or more after treatment.[3] Doctors typically test PSA levels every few months after radiation therapy looking for trends and some medical groups have proposed that if the PSA rises more than 2 ng/mL above the lowest level reached, further treatment should be considered, but some doctors advise tests to look for cancer in the body even if the PSA has not risen that much.[4] As there are no medical records submitted for Woodard since July 2022, it is unclear whether his PSA has risen since his radiation treatment.

In addition to his prostate cancer diagnosis, in April 2022, Woodard's blood work showed abnormal results, with elevated glucose levels, elevated liver enzymes, elevated triglycerides, and a high Cholesterol/HDLC Ratio. He also had low levels of Albumin, Anion Gap, HDL Cholesterol, a low white blood cell count, and low Urine Albumin. Medical Rs., ECF No. 128-3 at 1–3. No diagnosis was associated with these findings in the medical records submitted.

Although it is unfortunate that Woodard has been diagnosed with prostate cancer, the severity of the illness does not fall under the criteria set forth in the guidelines. Woodard has not presented evidence that he is suffering from an advanced illness with an "end-of-life" trajectory. To the contrary, the radiation therapy he underwent at the prison appears to have stabilized the illness for now. Nor has he shown that the prostate cancer, or the underlying conditions that may be causing his abnormal blood work, have diminished his ability to provide self-care within the correctional facility. In fact, the opposite appears to be true. In

---

(last viewed Jan. 23, 2024).

[3] https://www.cancer.org/cancer/types/prostate-cancer/treating/psa-levels-after-treatment.html (last viewed Jan. 23, 2024)

[4] Id.

March 2022 Woodard was working as an orderly in the medical/surgical unit and received good performance ratings. Individualized Needs Plan, ECF No. 128-4 at 3. In April 2022, he was living in open population, reported no complaints, and said that he was feeling well. Medical Rs., ECF No. 135-4 at 13, 15. Finally, Woodard has presented no evidence that he was not being provided needed specialized medical care as it appears that his prostate cancer is being treated successfully.

For these reasons, Woodard cannot show that his prostate cancer and abnormal lab results present an extraordinary and compelling reason for a sentence reduction. Accordingly, his motion based on these conditions is **DENIED**.

### B. COVID-19

The revised sentencing guidelines also address when a defendant can demonstrate an extraordinary and compelling reason for a sentence reduction based on an outbreak of an infectious disease. A defendant must show the following:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i);
>
> and (iii) such risk cannot be adequately mitigated in a timely manner.

USSG § 1B1.13(b)(1)(D).

Woodard cannot make this showing because he cannot show either that FCI Edgefield is affected by an outbreak of an infectious disease, or an ongoing public health emergency is currently in effect as declared by a federal, state, or local authority. At this time, FCI Edgefield has one open case of COVID-19 out of 1,984 inmates.[5] In addition, on May 11, 2023, the United States Department of Health and Human Services announced the end of the public health emergency caused by the COVID-19 pandemic.[6]

In addition, even if Woodard could show the existence of the first two conditions, he cannot show that he is at increased risk of suffering severe medical complications or death that cannot be adequately mitigated in a timely manner. Woodard argues that he is at special risk from COVID-19 because he was advised by a cardiologist to not receive a COVID-19 vaccination. Mot., ECF No. 128 at 8. However, Woodard did not cite to any medical record showing that a medical professional advised against his receiving the COVID-19 vaccine and the medical record indicates that he refused the vaccination on May 25, 2021. Med. Rs., ECF No. 135-3. Therefore, even if Woodard could show that COVID-19 was causing an outbreak at his facility or was considered an ongoing public health emergency, on the record before the court, he cannot show that his risk could not be mitigated by a vaccine against the virus.

Based on the foregoing, Woodard cannot show that COVID-19 creates an extraordinary and compelling reason for a sentence reduction and therefore, his motion for a sentence reduction based on the COVID-19 pandemic is **DENIED.**

---

[5] https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last viewed Jan. 23, 2024).
[6] https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html (last viewed Jan. 23, 2024).

## C. Career Offender Designation

Woodard also argues that if he were sentenced for the same offense today as he was in 1997, his sentence would be substantially shorter and that the disparity in the two sentences presents an extraordinary and compelling reason for a sentence reduction. The revised guidelines provide that a defendant is eligible for a sentence reduction if he can show the following:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§ 1B1.13 (b)(6) and (c).

In Woodard's case, he has served more than 10 years of the top-of-the-guidelines 327-month sentence that was imposed in 1997. The 327-month sentence was driven by his classification as a career offender. Under USSG §4B1.1, a defendant is designated a career offender if the following conditions apply:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) <u>the instant offense of conviction is either a felony that is either a crime of violence or a controlled substance offense</u>; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(emphasis added). "Controlled substance offense" is defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense." USSG § 4B1.2(b).

In <u>United States v. Norman</u>, 935 F.3d 232 (4th Cir. 2013), decided after Woodard was sentenced, the Fourth Circuit held that convictions for conspiracy to distribute drugs are no longer considered controlled substance offenses under USSG § 4B1.2. The court reasoned that because the "generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. <u>Id.</u> at 236–38. Accordingly, if sentenced today, Woodard's conspiracy offense would not be considered a controlled substance offense and therefore would not satisfy the requirements of USSG §4B1.1(2). In turn, rather than facing a guidelines sentence of 262 to 327 months, he would face a guidelines sentence of 168 to 210 months, with the difference in the sentences being 117 months. The court assumes without deciding that this difference in the two sentences is a "gross disparity" for purposes of the compassionate release statute. <u>See United States v. McCoy</u>, 981 F.3d 271 (4th Cir. 2020) (finding that district courts may permissibly treat the severity of a defendant's § 924(c) sentences and the extent of the disparity between the defendants' sentences and those under

the amended § 924(c) statute as "extraordinary and compelling reasons" for compassionate release); see also United States v. Cooper, No. 1:10CR00043-001, 2022 WL 1302708 (W.D. Va. May 2, 2022) (finding 5-year disparity in sentence defendant received as a career offender and sentence he would receive after no longer qualifying as a career offender to be an "extraordinary and compelling reason" for a sentence reduction); United States v. Morris, No. 4:13cr25, 2022 WL 1285183 (E.D. Va. Apr. 29, 2022) (quoting McCoy, 981 F.3d at 285) ("[S]imilar to the Fourth Circuit's statement in McCoy, this Court finds that Defendant has effectively demonstrated that he is currently serving a sentence substantially longer "than what ... [the Sentencing Commission] has now deemed an adequate punishment" for a defendant who committed the same crime with the same criminal history[ ]"); United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021) (granting compassionate release after applying McCoy reasoning to change in career offender designation).

Nevertheless, even though there is a gross disparity between the sentence Woodard received in 1997 and the sentence he would receive today for the same offenses, because he has discharged the sentence for the drug offenses, the court cannot grant him the relief he seeks. Woodard does not dispute that he has discharged the sentence on the drug conviction and is now serving the sentence for the gun smuggling conviction. Rather, he cites 18 U.S.C. § 3584(c), which provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." He argues that because the Bureau of Prisons is instructed to treat multiple terms of imprisonment as a single, aggregate term of imprisonment" it makes no difference whether a court specifies the sequence in which each portion of an aggregate sentence must

be served because such command would "be effectively meaningless," citing in support, United States v. Gonzales, 520 U.S. 1, 8 (1997). Resp., ECF No. 139 at 1–2.

However, this argument misses the mark. The Gonzales court addressed the question of whether a federal court could direct that a prison sentence under 18 U.S.C. § 924(c) be ordered to run concurrently with a state-imposed sentence and determined that it could not. Id. at 2–3. The Court was trying to square the plain text of § 924(c), that a term of imprisonment imposed for violation of the statute should not run concurrently "with any other term of imprisonment including that imposed for the ... drug trafficking crime in which the firearm was used or carried" with a line in a Senate Committee report discussing the statute that said "'the mandatory sentence under the revised subsection 924(c) [should] be served prior to the start of the sentence for the underlying or any other offense." See discussion, Gonzales, 520 U.S. at 4–8. The Tenth Circuit Court of Appeals had looked at the legislative history of the statute to support its conclusion that if the statement in the legislative history were applied literally, "'respondents would have to serve first their state sentences, then their 5–year federal firearms sentences, and finally the sentences for their narcotics convictions— even though the narcotics sentences normally would have run concurrently with the state sentences, since they all arose out of the same criminal activity.'" Id. at 4 (quoting United States v. Gonzales, 65 F.3d 814, 821 (10th Cir. 1995)). Based on its reading of the legislative history, the circuit court concluded that to avoid that result, "§ 924(c)'s mandatory five-year sentence may run concurrently with a previously imposed state sentence that a defendant has already begun to serve." Gonzales, 65 F.3d at 821.

The Supreme Court reversed. As part of its determination to follow the plain language of the text rather than a requirement "found only in a single sentence buried in the legislative history" that a firearms sentence must run first, the court reasoned that because § 3584(c) instructs the Bureau of Prisons to treat multiple terms of imprisonment, whether imposed concurrently or consecutively, "for administrative purposes as a single, aggregate term of imprisonment," as a practical matter, it made no difference whether a court specified the sequence in which each portion of an aggregate sentence must be served. Gonzales, 520 U.S. at 8. From that relatively minor point on an unrelated issue, Woodard asks this court to conclude that his two sentences for separate offenses should be treated as an aggregate term of imprisonment for purposes of his compassionate release motion.

But to do that would ignore the fact that courts that have addressed this issue directly have concluded otherwise. For example, in United States v. Vaughn, 806 F.3d 640 (1st Cir. 2015), a defendant was serving a 168-month prison term for possession of cocaine with intent to distribute. While serving that sentence, he was convicted of conspiracy to possess cocaine with intent to distribute related to his attempts to have heroin smuggled into the prison facility. He was sentenced as a career offender on that charge and assessed a 120-month sentence to run consecutively to the 168-month term he was already serving. Id. at 642.

The month before he completed the first term of imprisonment, the defendant filed a motion for a sentence reduction based on USSG Amendments 782 and 788, which retroactively reduced by two levels the base offense for many drug offenses. By the time the parties briefed the issues, the defendant had completed the first sentence and agreed that the second sentence was ineligible for a sentence reduction because of the career offender

14

designation. However, he argued that based on § 3584(c), he was serving a single aggregate

sentence of 288 months. Id. at 642–44. The First Circuit rejected his argument:

> Section 3584(c) does not support Vaughn's position because it specifies that aggregation is "for administrative purposes," and the issue at hand is judicial, not administrative. The BOP is responsible for administration of sentences. See United States v. Wilson, 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." (emphasis added)). A sentence reduction under § 3582(c)(2), on the other hand, involves discretionary decision-making by the district court and cannot be described as administrative. Applying § 3584(c) to this situation would essentially rewrite the statute to extend aggregation to all purposes.

Id. at 643–644.

The court cited several cases where courts had, in limited circumstances, aggregated

consecutive sentences for purposes of a § 3582(c)(2) sentence reduction, but distinguished

those cases as each of them involved consecutive sentences that were imposed at the same

time by the same judge. Vaughn, like Woodard in this case, was sentenced at two different

times, by two different judges, in two different jurisdictions, for unrelated offenses. Id. at 641,

644. The court reasoned that when sentences are imposed simultaneously, it is not always clear

in what order the sentences should be served so fairness concerns could be raised by the denial

of a § 3583(c)(2) sentence reduction on the basis that only part of the total prison term had

been served. Id. "There is no such fairness concern when, as here, a defendant commits a

crime while incarcerated and receives an additional consecutive sentence while he is already

serving the first sentence." Id.

Other courts considering a sentence reduction for the first of two separately imposed consecutive sentences have reached similar conclusions. See, e.g., United States v. Llewlyn, 879 F.3d 1291 (11th Cir. 2019) (citing Vaughn in rejecting argument based on § 3584(c) that court had could reduce an already-completed sentence under § 3582(c)(2)); United States v. Parker, 472 F. App'x 415, 417 (7th Cir. 2012) (denying motion for sentence reduction under § 3582(c)(2) where defendant had completed eligible sentence but remained incarcerated for offense committed while in prison); United States v. Gamble, 572 F.3d 472, 473–75 (8th Cir. 2009) (same).

While the above-cited cases all dealt with motions under § 3582(c)(2) and Woodard brings his motion under § 3582(c)(1), there is no reason to find that § 3584(c) is subject to a different interpretation as the same concerns apply. Accordingly, the court finds that because Woodard has completed the sentence that makes him eligible for a sentence reduction and now is serving a separate sentence imposed for a separate offense committed well after the first, he is not entitled to a sentence reduction.

Because the court finds that Woodard is not entitled to a sentence reduction, it is not necessary to address the government's argument that Woodard cannot make his argument in a compassionate release motion. For the same reason, the court will not weigh the § 3553(a) factors. See United States v. Malone, 57 F.4th 167, 174 (4th Cir. 2023) ("[I]f the district court has determined that the defendant's § 3582(c)(1)(A) motion has demonstrated extraordinary and compelling reasons for release, it must then turn to the relevant sentencing factors set forth in § 3553(a) 'to the extent ... they are applicable.'")

## III. Conclusion

For the reasons stated, the court is unable to conclude that Woodard is entitled to a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Therefore, the court **DENIES** Woodard's motion for compassionate release, ECF No. 128. The Clerk is **DIRECTED** to send a copy of this opinion and the accompanying order to Woodard.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: January 31, 2024

Michael F. Urbanski
Chief United States District Judge